# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CASE NO. 06-20243
HON. LAWRENCE P. ZATKOFF

ROBERT MICHAEL BOYDEN,

    Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on June 14, 2007.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

On this date, Defendant Robert Michael Boyden appeared before this Court for purposes of being sentenced in conjunction with his guilty plea to Count 1 of the Indictment filed against him on May 8, 2006. For the reasons set forth herein, the Court hereby imposes the following sentence, which the Court believes is a reasonable disposition for this Defendant. The Court orders that Defendant be turned over to the custody of the Bureau of Prisons and confined for a term of 1day, with credit for time served. Defendant's term of imprisonment is to be followed by a 3 year term of supervised release. Special conditions of Defendant's supervised release shall include (but are not limited to): (1) Defendant shall serve the first twelve (12) months in a Community Correction Facility; and (2) Defendant shall undergo counseling by a registered sex therapist with such

frequency as deemed necessary by the U.S. Probation Department. The Court also imposes a fine of $ 5,000.00 and a special assessment of $100 pursuant to 18 U.S.C. §3013(a). Defendant shall pay for the cost of confinement at the Community Correction Facility.

## II. BACKGROUND

**A.  Underlying Conduct**

On April 19, 2003, using the email address of Rboyden@aol.com, Defendant purchased access to the website "Dark Feelings - Your Darkest Feelings . . .," which had been identified by the Bureau of Immigration and Customs Enforcement ("ICE") and one of its task forces as a site providing online child pornography to paying subscribers. On April 15, 2004, federal agents conducted a trash pull at Defendant's residence and discovered several pieces of evidence. On August 4, 2005, ICE agents interviewed Defendant at his home, at which time Defendant provided the agents with a written consent to perform a computer forensic preview of his home computer (the "HP computer") and a business laptop computer (the "Dell laptop"). Suspected images of child pornography were found on the HP computer and it was seized. No images of child pornography were found on the Dell laptop.

Defendant admitted to searching for child pornography (which Defendant described as images of young boys or girls under the age of 18 years old engaged in sexual activity) on the Internet for a number of years, usually for girls who were 13-14 years old. He admitted to purchasing access to at least three child pornographic websites at one time or another. Defendant did not save any child pornographic images to his computer or any removable media, nor did he use email to transmit child pornographic images.

2

The HP computer contained approximately 226 child pornographic images in temporary Internet files, which images primarily consisted of females in their early teens posing nude. Approximately 1,132 images of pre-pubescent females and females in their early teens posing nude or engaged in sexually explicit acts alone or with other children or adults were found on unallocated space on the HP computer. There were also nine movie files involving the sexual exploitation of a minor (females in their early to mid-teens engaging in sexually explicit acts alone or with an adult).

On June 1, 2006, Defendant pled guilty pursuant to a Rule 11 Plea Agreement. The Agreement provided that the applicable Guideline range was 51-63 months.

**B.     Defendant**

Defendant is a 59 year old man who lives in Canton, Michigan. Defendant served in the U.S. Army from 1968 through 1971, when he was honorably discharged. Defendant then graduated from Eastern Michigan University with a Bachelor of Science degree and later obtained a Master of Arts degree from Eastern. Defendant has been married to his current wife, Sherry, since 1978, and they have two adult daughters. Defendant was a licensed special education teacher for Wyandotte Public Schools from 1976 through June 2005, when he voluntarily retired from his position as the result of charges in this case. During the last six years of employment, Defendant worked at Monroe Elementary School and was assigned to mainstream children who struggled in specified academic areas. Pursuant to an employment verification from the Wyandotte Public Schools, the superintendent described Defendant as someone with "excellent work ethic, a dedicated and professional teacher, creative, dependable, and a great educator and exemplary teacher."

## III. PRE-SENTENCE REPORT and GUIDELINE CALCULATIONS

By statute, Defendant may be sentenced to a term of imprisonment of up to 10 years upon a conviction for Count 1. The Court has reviewed the Presentence Investigation Report ("PSR") in this case and notes the following computations set forth therein. Defendant has a base offense level of 18 for violation of the provisions of 18 U.S.C. § 2252. In addition to the base offense level, a number of adjustments have been proposed in calculating the total offense level. The proposed adjustments are:

(1) A two-level enhancement pursuant to 2G2.2(b)(2) because the "offense involved material depicting prepubescent minors and/or minors under the age of 12."

(2) A two-level enhancement pursuant to 2G2.2(b)(6) "as a computer was used for the possession, transmission, receipt, or distribution of the material."

(3) A five-level enhancement pursuant to 2G.2.2(b)(7) because "the offense involved more than 600 images."

(4) A three-level reduction pursuant to 3E1.1(a) and (b)(1) for acceptance of responsibility as he "entered a timely plea and made provided timely information concerning his involvement in the instant offense."

After applying the foregoing adjustments, the proposed total offense level for Defendant is 24. As Defendant has no prior criminal conviction record, he has zero criminal history points and his classification is a Criminal History Category I. The Guideline range pursuant to the calculations set forth above is 51-63 months. The Government did not filed any objections to the PSR, and the Defendant's objections to the PSR have been resolved to the satisfaction of all parties.

After reviewing the reports of three doctors who have evaluated Defendant (none of which were in the possession of the probation officer when preparing the PSR), the Court finds that the proposed two-level enhancement pursuant to 2G2.2(b)(2) (because the "offense involved material depicting prepubescent minors and/or minors under the age of 12") is not appropriate in this case.

4

Defendant explained that in order to find pictures of young adolescent females, he had to scroll through a multitude of pictures of children of all ages. Data retrieved from the computer by Government agents indicate that prepubescent images were accessed but not saved on the hard drive. On the other hand, almost all of the images that were saved or were in the "allocated space" of his computer were of "females in their early teens posing nude" and all of the nine movie files found involved "a female in her early to mid teens engaging in sexually explicit acts alone or with an adult." Each of the three doctors who personally examined Defendant found credible Defendant's statements that he was attracted only to young adolescent females and that he was not attracted to or interested in prepubescent children. Accordingly, the Court does not believe a two-level enhancement pursuant to Section 2G2.2(b)(2) should be applied in this case.

The Court adopts the other proposed adjustments (the two-level enhancement pursuant to 2G2.2(b)(6), the five-level enhancement pursuant to 2G2.2(b)(7) and the three-level reduction pursuant to 3E1.1(a) and (b)(1)). Accordingly, the Court finds that the total offense level for Defendant is 22 (not 24), which results in a Guideline range for Defendant of 41-51 months.

### IV. SENTENCING MEMORANDA

Defendant filed a Sentencing Memorandum, which included letters/reports from Dennis P. Sugrue, Ph.D. ("Dr. Sugrue") and Stephen G. Landau, M.D. ("Dr. Landau"), two doctors who have treated and/or evaluated Defendant since his arrest for the instant offense. In sum, Defendant's Sentencing Memorandum requests that the Court accept the Rule 11 Plea Agreement and impose a sentence which is in the best interests of the Government and Defendant. Defendant's Sentencing Memorandum repeatedly noted that Dr. Sugrue and Dr. Landau opined that imprisonment will

accomplish little with respect to Defendant. Defendant asked the Court to impose as minimal a period of incarceration as possible.

The Government also filed a Sentencing Memorandum. The Government's Sentencing Memorandum tracks the PSR and the Government concurred with each of the enhancements detailed by the Probation Department (as set forth in Section III above). The Government acknowledged that the Guidelines are now advisory in nature but advocated that the Court impose a prison term of 63 months, which is at the top of the Guideline range. The Court notes that at the time the Government's Sentencing Memorandum was prepared, the only "evaluation" of Defendant conducted by Government agents or doctors was a review of the record in this case by Elizabeth J. Letourneau, Ph.D. Dr. Letrourneau never evaluated Defendant personally, but she concluded that the opinions of Dr. Sugrue and Dr. Landau were deserving of little weight. After the Court adjourned Defendant's February 22, 2007, sentencing, the Government asked a new doctor, Tamara Penix, Ph.D. ("Dr. Penix"), to conduct a personal evaluation of Defendant, as well as talk to certain members of Defendant's family. Dr. Penix did so during the month of May, 2007 and her report was submitted to the Court on June 1, 2007.

## V. SENTENCING HEARING

On this date, the Court conducted a sentencing hearing. Prior to rendering the Defendant's sentence, the Court informed the parties of its conclusion that the applicable Guideline range was 41-51 months rather than 51-63 months as a result of the Court's rejection of the proposed two-level enhancement pursuant to 2G2.2(b)(2). Each party was given an opportunity to respond or object to the Court's conclusion. Defendant offered no objection to the Court's conclusion regarding the

6

rejection of the two level enhancement pursuant to 2G2.2(b)(2), and asked the Court to sentence Defendant to the minimum sentence possible. The Government objected to the Court's rejection of the proposed two-level enhancement pursuant to 2G2.2(b)(2). In addition, the Government asked the Court to sentence Defendant to a term of imprisonment within the guideline range.

## VI. ANALYSIS

The Court has thoroughly reviewed the file of Defendant, including the PSR, the Sentencing Memorandum filed by the Government, the statements of Government counsel, the Sentencing Memorandum filed by Defendant, the statements of counsel for Defendant and Defendant himself, and the many letters of support the Court received on behalf of Defendant. In this case, however, the Court has paid particular attention to the findings and opinions of the three doctors who personally evaluated Defendant, *i.e.*, Dr. Sugrue, Dr. Landau, and Dr. Penix. The conclusions of the doctors shall be discussed *infra*.

As the Government notes, the crime to which Defendant has pled guilty carries a prison term of up to 10 years. As discussed above, the Court has concluded that the applicable range under the Guidelines for Defendant is 41-51 months, not the 51-63 months. The Court emphasizes that it has consulted the Guidelines, which of course are now advisory, and has taken them into account in sentencing Defendant. In fact, it is with the Guidelines that the Court initiated its assessment of an appropriate and reasonable sentence for Defendant. The Court recognizes that Guideline ranges do not consist of an arbitrary set of numbers, but rather exist as the result of recommendations by an expert commission which has studied the sentencing process at great length. Further, the Court has, in this case as in any other case, given heavy weight to the Guidelines in determining an appropriate

7

and reasonable sentence for this Defendant. For the reasons set forth below, the Court departs from the Guidelines in this case because it involves unusual circumstances that dictate such a departure, and because a number of the factors in 18 U.S.C. §3553(a) weigh in favor of a sentence of imprisonment below the Guideline range.

### 1. *Other Child Pornography Possession Cases in Michigan*

One of the fundamental goals of the Guidelines has been, and remains, to reduce disparity among federal sentences. This same goal is memorialized in 18 U.S.C. § 3553(a)(6) (the court "shall consider - - the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). Although adherence to the Guideline range will accomplish those goals in most cases, the Court does not find that to be the situation in this case. Moreover, strict adherence to the Guidelines range in this case would subject Defendant to a disproportionately and severely greater prison term than he would receive upon a like conviction in state court.

The Court has reviewed many recent cases involving convictions for child pornography in the State of Michigan, both in federal and state court, and the Court has found that the vast majority of defendants sentenced for possession of child pornography at about the same time as Defendant possessed child pornography have not been subjected to a term of imprisonment approaching the Guideline range in this case. Many of those cases are discussed immediately hereafter. For example,   In November 2005, Michael David Hein was sentenced in Clare County to 14 months to seven years in prison for possession of child pornography on a computer and using a computer for a criminal act during June 2004. Mr. Hein received this sentence notwithstanding the fact that

8

he had a prior child pornography-related conviction on his record (for videotaping two minors in a bathroom), for which he had been sentenced to one year in prison in Saginaw County in 2001.

In October 2005, Gary Conrad Heet was sentenced to 21 months in prison and two years supervised release after pleading guilty to possession of child pornography in the U.S. District Court for the Western District of Michigan. Mr. Heet was also fined $5,000. Mr. Heet was an employee of the U.S. Fish & Wildlife Service who used his work computer to access the child pornography that served as the basis of his conviction. In August 2005, Dominique Merritt was sentenced to 30 months in prison, a $20,000 fine and three years supervised release after pleading guilty to possessing child pornography. Mr. Merritt was sentenced in U.S. District Court for the Eastern District of Michigan.

In May 2004, Brian Hartunian was sentenced in Oakland County Circuit Court to five months of imprisonment and probation. Mr. Hartunian pled guilty to five counts of child pornography and five counts of using a computer to commit a crime. In early 2004, John Gomez, then an active Oakland County deputy sheriff, pled guilty to possessing and distributing child pornography. He had over 4,500 images of child pornography, including one of an adult man raping an infant child. The prosecutor described the case as "the worst of the worst" he had ever seen or heard about. Mr. Gomez received a one-year tether, three years probation and 500 hours of community service. In January 2004, Robert D. Helferty, M.D. was sentenced in U.S. District Court for the Eastern District of Michigan to serve 18 months in prison (which was far below the Guideline range of 27-33 months) and fined $60,000 after pleading guilty to possession of child pornography. He also had his medical license suspended as a result.

In February 2002, Gregory Thomas Huizar, Sr. was convicted in Eaton County District Court

9

of possessing child sexually abusive material, a misdemeanor offense punishable by a maximum of a one-year jail term and/or $1,000 fine. Mr. Huizar was sentenced in April 2002 to 60 days in jail, $500 fines, $500 costs and a $50 crime victims rights fee. It should be noted that (1) Mr. Huizar was employed as a patrolman by the Eaton Rapids Police Department, (2) he used a departmental computer to access approximately 300 child pornography web sites, (3) approximately 200 images of internet child pornography were downloaded onto the computer during his shift (which was at night and on a shift which he worked alone), and (4) a web site search on AOL executed during his shift was for "daddy and daughter incest."

  2. *Effect of Defendant's Plea*

In this case, Defendant pled guilty to the sole Count set forth in the charging Information. Because the case did not involve criminal acts of others, there was no ability to provide substantial assistance by providing relevant information on other criminal defendants in exchange for a reduced term. And, although Defendant immediately admitted responsibility for the crimes, agreed to plead guilty and saved all involved with the time and expense of going to trial, Defendant received little in return. Rather, the only benefit Defendant realized for his cooperation was the lowering of his offense level by three points for the acceptance of responsibility. In actuality, however, had Defendant proceeded to trial and been found guilty on all counts, Defendant would have faced only a slightly higher guideline range (70 to 87 months), but the Court still would have maintained the authority to sentence below that range. In other words, Defendant would have risked little by going to trial. Accordingly, I do not believe Defendant should, in essence, be "penalized" for having pled guilty.

3. *18 U.S.C. § 3553(a)(1)*

Section 3553(a)(1) instructs that the Court is to consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" This Defendant has a long history of personal responsibility. He held the same job for the 29 years. He has done so through a divorce, a second marriage and episodes of substance abuse and depression that have plagued his youngest daughter. He served his country in the U.S. Army and was honorably discharged. Defendant is also a longtime homeowner. Consistent with this history, Defendant exhibited personal responsibility by admitting his guilt and pleading guilty to the instant offense, without even requiring the Government to go before a grand jury in order to obtain an Indictment.

4. *18 U.S.C. §3553(a)(2)(A)*

Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed - - to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" In this case, the Court believes a term of imprisonment of 51-63 months would not accomplish any of those objectives. In many of the cases the Court reviewed, persons were arrested, convicted and sentenced for arranging to meet minors for the purpose of engaging in sexual relations, not simply for receiving and/or distributing pornography. More significantly, in the cases reviewed involving Michigan defendants seeking to engage in actual sexual relations with minor children, the prison terms imposed were far shorter than the bottom of the Guideline range to which Defendant is subject.

I believe it can unequivocally be said that the act or attempted act of engaging in sex with a minor is a much more abhorrent crime than that committed by a person who is sitting at his computer looking at pictures of children (particularly if the pictures viewed are not original and have

been circulating on the web for some time, and there is no assertion by anyone that Defendant created any of the materials he possessed or provided to anyone). This viewpoint should not be interpreted as the Court condoning the behavior of Defendant or child pornography in general, for both are horrible things. In assessing the fairness of the sentence to be imposed on this Defendant, however, this Court must consider the sanctions imposed in similar cases, including those imposed upon true child predators.

For example, in November 2005, Daniel Mathison was convicted for using the Internet to arrange a tryst with someone he thought was a 14-year old girl. Mr. Mathison pled no contest to the illegal use of the Internet for child sexual abuse and was sentenced to a term of only one year in prison. Mr. Mathison was a Detroit police officer at the time he engaged in such conduct, although there is no indication that he used his position in furtherance of his crime. On April 3, 2006, a Warren man, Erik Bacheldor, was sentenced to one year in jail and 5 years probation in Macomb Circuit Court. Mr. Bacheldor was arrested in December 2005, when he went to a house to have sex with a person he thought was a 15 year old girl. These cases are indicative of the terms of imprisonment to which child predators have been subject in Michigan, and the Court believes they strongly support sentencing Defendant below the Guideline range in this case.

First, the Court believes the Guideline range cannot accurately reflect the seriousness of the Defendant's conduct if child predators are subject to sentences far below the Guideline range. Second, sentencing a man who possesses child pornography to a term of six to seven years while a child predator receives only a one year jail sentence does not promote respect for the law; to the contrary, it subjects the law to ridicule, criticism and skepticism. Finally, this Court cannot conclude that a sentence within the Guideline range will provide just punishment for this Defendant when

12

persons throughout the State of Michigan are receiving much shorter sentences for far more heinous crimes, including those defendants seeking to engage in sexual relations with minor children. For the foregoing reasons, the Court finds that the imposition of a term of imprisonment within the Guideline range would undermine the elements set forth in Section 3553(a)(2)(A).

5.  18 U.S.C. §§ 3553(a)(2)(C) and (D)

Sections 3553(a)(2)(C) and (D) provide that the Court must consider "the need for the sentence imposed - - to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" In this case, the Court finds that a lengthy term of imprisonment will not facilitate either of these factors any more than a short, or even no, term of imprisonment would.

As referenced above, the Court relies heavily on the opinions of the doctors who personally have evaluated and/or treated Defendant. After Defendant was first contacted by Government agents in August, 2005, Defendant went to see Dr. Sugrue and Dr. Landau. Dr. Sugrue met with Defendant for six sessions to conduct a psychological examination of Defendant. Dr. Sugrue concluded that Defendant was experiencing significant shame and distress as it relates to his involvement in the instant offense. Dr. Sugrue has opined that Defendant "is not a pedophile nor does he present any risk to children." Dr. Sugrue believes that Defendant suffers from a compulsive sexual disorder (sexual addiction), characterized by high frequency, potential negative consequences and lack of control. Dr. Sugrue concluded, "But other than a public example, I question any societal benefit to be derived from this man serving time in prison. His best chance for successful rehabilitation and healing resides in effective treatment that cannot be accessed in the penal system."

13

Defendant began therapy with Dr. Landau, a psychiatrist who specializes in sexual addiction, in the fall of 2005. As of June 20, 2006, Dr. Landau had seen Defendant for 61 sessions of psychotherapy. Defendant continues to see Dr. Landau as of the date of sentencing. In a letter dated June 20, 2006, Dr. Landau concluded (emphasis added):

> He has never had any attraction to real children. In fact, he no longer has any motivation to even view child or adult pornography. **He represents no threat to anyone and never did.** He is a bright, compassionate and sensitive man who has no problem with impulse control other than the addiction to pornography. **This behavior, which was so out of keeping with the rest of his life and personal standards, was a temporary blind spot in his otherwise normal and socially conscious moral compass that became an addiction.** It arose out of intra-psychic conflicts that were not accessible to his conscious thought at the time. He has now resolved the repressed conflicts that led him to getting addicted to pornography in the first place.

At that time, Dr. Landau concluded that Defendant is unlikely to repeat the behavior that serves as the basis for this criminal case and that Defendant is not a pedophile.

On January 12, 2007, Dr. Landau submitted a second letter regarding his counseling of Defendant. Dr. Landau stated that he had seen Defendant an additional 21 times since June 20, 2006. Dr. Landau indicated that Defendant has been active and engaged in psychotherapy and putting into practice what he is learning through therapy. Dr. Landau opined that Defendant

> has had not impulses to view pornography and even the thought of such behavior is highly aversive to him. He has excellent control over his behavior and should have no difficulty maintaining his progress. . . . **I feel very confident that he is most unlikely to relapse, especially if therapy could be continued.** From a clinical perspective, I think that he would benefit from continuing his current outpatient therapy. . . . **He is already, successfully, practicing relapse prevention techniques which would commonly be a main goal of group therapy in a prison.**

(emphasis added).

14

The evaluation and resulting opinions of the Government's doctor, Dr. Penix, are consistent with the opinions of Dr. Landau and Dr. Sugrue. Dr. Penix stated that her "psychological evaluation was conducted to examine [Defendant's] risk of future sexual misconduct and to consider treatment options." In performing her evaluation of Defendant, Dr. Penix conducted a number of tests and examinations of Defendant, including the Minnesota Multiphasic Personality Inventory - II ("MMPI-II"), the Multiphasic Sex Inventory ("MSI) Adult Male Form, and Risk Matrix 2000 ("RM 2000"). Notably, Dr. Penix stated that:

> [t]he RM2000S predicts sexual reoffending. Mr. Boyden's risk is categorized as low, indicating a 3-8% chance of sexual reoffense 5 years post release and 7-11% chance at 15 years post release. Mr. Boyden's nonsexual violence and combined risk prediction scores are also in the low risk category.

Dr. Penix observed that Defendant "is a principled individual . . . has demonstrated his intention to understand and alter his sexual self-control problem by attending regular treatment sessions for the past year and a half . . ." Dr. Penix also made the following observation:

> When asked directly about sexual attraction to young female teens, Mr. Boyden said that he is aroused by underage females who try to appear older just as he is aroused by adult females in everyday life. He vehemently stated that he would never try to engage in inappropriate behavior with any female even if they draw his attention, and this appears consistent with the absence of reports of misconduct in thirty years in the school setting and those of his wife and daughter. Thus Mr. Boyden experiences deviant arousal to underage females. He denies all arousal to sexually immature body types and males. His forthrightness regarding interests in viewing all manner of unusual and degrading sexual poses and acts in young female teens and women, while by no means proving his lack of interest in prepubescent girls, seems to support it.

In addition, Dr. Penix reached the following conclusions:

    A.    Mr. Boyden stated that he had never considered acting on his arousal to children. This is consistent with his personality

15

and psychological features. Mr. Boyden was singularly conflict avoidant. For him to approach a child sexually would be to invite conflict, which he is highly unlikely to initiate. Mr. Boyden is also interpersonally anxious and shy about sex, two features that make it unlikely he would engage someone sexually. He seeks to fit in to society in a conventional fashion to achieve approval. This is evident not only in his personality style, but in his appearance and approach to tasks. It is no coincidence that his deviant sexual behavior appeared private and was unknown to most people in his life for a very long time. It would be uncharacteristic of Mr. Boyden to incur disapproval by risking a contact sexual offense. He has been trying to appear "normal" for a very long time knowing he was fighting a losing battle. He would not have willingly revealed himself to be nonnormative. Moreover, Mr. Boyden's wife, who has suffered humiliation as a result of his behavior and who will endure financial difficulties as a result of his incarceration, and his daughter, who has and will suffer similarly, reported that Mr. Boyden never harmed either of his children or any of their friends. Thus it appears that Mr. Boyden has not harmed a child directly based on available evidence. Mr. Boyden does not meet the criteria for a diagnosis of pedophilia.

B. Mr. Boyden is at low risk of sexually reoffending. That risk will be diminished even more through treatment that targets the dynamic aspects of reoffending including controlling the context, altering arousal, developing a health[y] sexual life, and developing a healthy overall life worth living.

On the basis of the PSR, the evaluations of Dr. Sugrue, Dr. Landau and Dr. Penix, the Court believes that the key to (a) ensuring that the public is protected from further crimes of Defendant, and (b) providing Defendant "with needed education . . . [and] correctional treatment in the most effective manner" would be continued therapy and treatment such that he is able to cope with difficult situations without resorting to pornography.

As expressed by Dr. Sugrue and Dr. Landau, an extended jail sentence would not help Defendant receive correctional treatment or achieve coping mechanisms; rather, an extended prison

sentence is only more likely to result in negative behavioral acts. Although Dr. Penix does not address the need or effect of a prison sentence for Defendant, Dr. Letourneau (despite her criticism of the methods of Dr. Sugrue and Dr. Landau) agrees with the conclusions of Dr. Sugrue and Dr. Landau that a prison sentence would have a detrimental effect for someone like Defendant (who all evaluating doctors have concluded presents a low risk of reoffending):

> It is entirely possible that Mr. Boyden presents a low risk of reoffending with new child pornography violations and a low risk of graduating to actual child sexual assault. Indeed, information from multiple sources appears to suggest low risk. **If Mr. Boyden presents a low risk to society, a lengthy prison sentence could do more harm than good** - by accruing substantial fiscal costs to taxpayers and fiscal, emotional and psychological costs to Mr. Boyden's family, in the absence of improved community safety.

For the foregoing reasons, the Court concludes mandatory counseling with a registered sex offender therapist (which shall be required during his period of supervised release, including the time he serves in a Communit Correctional Center) will be far more effective in achieving the objectives of Sections 3553(a)(2)(C) and (D) than would an extended term of imprisonment pursuant to the Guideline range.

## VII. CONCLUSION

Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Defendant be turned over to the custody of the Bureau of Prisons and confined for a term of 1 day, with credit for time served. Defendant's term of imprisonment is to be followed by a 3 year term of supervised release. Special conditions of Defendant's supervised release shall include (but are not limited to): (1) Defendant shall serve the first twelve (12) months in a Community Correction Facility; and (2) Defendant shall undergo counseling by a registered sex therapist with such frequency as deemed

17

necessary by the U.S. Probation Department. The Court also imposes a fine of $5,000.00 and a special assessment of $100 pursuant to 18 U.S.C. §3013(a). Defendant shall pay for the cost of confinement at the Community Correction Facility.

Defendant shall self-report to the Community Correctional Center as designated by the Community Correction Center.

IT IS SO ORDERED.

Dated: June 14, 2007                                             s/Lawrence P. Zatkoff
                                                                 LAWRENCE ZATKOFF
                                                                 UNITED STATES DISTRICT JUDGE